DIANNE BUTTS,

    *Plaintiff,*

v.

PRINCE WILLIAM COUNTY PUBLIC
SCHOOLS,

    *Defendant.*

1:14-cv-01073 (LMB/TCB)

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Dianne Butts ("Butts") hereby opposes Defendant the Prince William County School Board (the "School")'s Motion for Summary Judgment, and she submits this Memorandum of Law in Opposition Thereto.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Plaintiff agrees with many of the facts set forth in Defendant's Statement of Material Facts Not In Dispute, though others are either irrelevant, unsupported, or contrary to the evidence. Plaintiff specifically objects to the following facts proffered by Defendant, using the paragraph numbers from Defendant's Brief:

3. Plaintiff contends that her evaluations at Enterprise and Mculiffe did not reflect areas of concern. Instead, Butts's Teacher Evaluation Report for the first year of her employment as a teacher showed that she needed improvement in only one area, providing a favorable psychological environment. (Def. SJ Ex. 3.)

4. Plaintiff never intended to resign from the School in March 2007.

Instead, she received a form from the School that incorrectly stated that Butts was only eligible for two years of military leave. (Def. SJ Ex. 8.) The School, through its organizational designee, has admitted that the form sent to Butts dated February 23, 2007 was incorrect. (Mondak Dep. 104:20-105-10.)

5.    Plaintiff objects to the School's unsupported assertion that Butts "asked the Army to stay on Active dusty status in order to maximize her retirement benefits."

6.    Plaintiff objects to the School's unsupported assertion that Mondak understood Butts's status to be retired. Additionally, Mondak's belief is not material.

8.    Plaintiff objects to the statement that "Butts did not possess the administrative qualifications or certification for either position." It is undisputed that Butts did not possess a certification from the Commonwealth to be an administrator, but the School could have assisted her in securing that certification.

9.    Plaintiff objects to the characterization that she undermined Irvin. Butts testified that she did not make a statement to other team members that Ms. Irvin (Simpson) did not know what she was doing. (Butts Dep. Volume I 169:20-170:9.) Plaintiff also objects to the assertion that she refused to teach pursuant to PWCS lesson guides or established practices. Instead, in the few short days she

taught at Fitzgerald, she relied upon her eight years of teaching experience.

11. Butts did not admit to criticizing Irvin. The document referenced speaks for itself.

20. Butts's letter did not ask for an African American School.

22. Plaintiff objects to the unsupported argument that she displayed indignation.

## STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The Court must view the record in the light most favorable to the nonmoving party, and must draw all inferences in favor of that party." *Nesari v. Taylor*, 806 F. Supp. 2d 848, 859-60 (E.D. Va. 2011) (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir.2002)).

## ARGUMENT

The undisputed material facts show that the School failed to comply with USERRA's reemployment provisions. In short, not long after after the School reemployed Butts, it learned that she was unqualified for her position. The School was obligated to make reasonable efforts to help her qualify for that position, and Butts

agrees that it did so. When those efforts failed, however, the School was obligated to place Butts in some other position for which she was qualified, and it never attempted to do so.

## I. THE SCHOOL DID NOT APPROPRIATELY REEMPLOY BUTTS BECAUSE IT DID NOT FOLLOW 38 U.S.C. §4313'S ORDER OF PRIORITY.

### A. *The School Learned that Butts Was Unqualified to Serve As A Teacher, But it Never Placed Her in Any Other Position.*

A USERRA employer must follow the order of priority contained in 38 U.S.C. § 4313 when attempting to reemploy a returning service member. As discussed below, the first position that an employer must attempt is the position in which the employee would have been employed, with reasonable certainty, but for the period of service. The second position that the employer must attempt is the pre-service position, which is "the position of employment in which the person *was employed* on the date of the commencement of the service in the uniformed services, or a position of like seniority, status and pay, the duties of which the person is qualified to perform . . . ." 38 U.S.C.A. § 4313(a)(2)(B) (West). This is the position that the School attempted to place Butts in upon reemployment.

But very soon after placing Butts in each of two teaching positions, the School learned that Butts was unable to meet its standards of performance for teachers. For example, Sinclair Elementary School's then-Principal Donna Fagerholm claims in her declaration that Butts was not communicative, and that Butts's students were confused and unable to complete their homework. (Ex. 1). And the School has admitted, through its organizational designee, that upon her appointment to the Montclair fourth-grade

teaching position, Butts was placed on an action plan in order to help her become qualified to teach fourth grade and never became qualified to teach. (Soltis Dep. 29:16-36:16.)

After the School admitted, through its organizational designee, that Butts was placed on an action plan in order to become qualified and that she never became qualified to teach[1], the School Board's designees changed their testimony. Ms. Forgas testified that Butts, while on her action plan, was *qualified* to teach because she was certified by the State of Virginia, even though she was unable to meet the standards for performance. (Forgas Dep. 69:9-72:19.) This is, of course, a transparent attempt to walk back the School's earlier acknowledgment that Butts was, in fact, no longer qualified to teach. And it flies in the face of the definition of "qualified" contained in the pertinent regulations: "Qualified, with respect to an employment position, means having the ability to perform the essential tasks of the position." 20 C.F.R. §1002.5(h). The School admitted that Butts needed to learn several things—(1) instructional strategies, (2) curriculum pacing, (3) assessing students, (4) student engagement, and (5) parent communication—in order to become qualified to teach fourth grade, and that she was never able to learn those things, despite expending a great deal of energy attempting to do so. (Soltis Dep. 29:20-31:19.) Without those strategies, according to the School's designee Ms. Soltis, Butts would not be qualified "to teach fourth grade at any school." (Soltis Dep. at 31:14-19.)

---

[1] And after lengthy conferences during the deposition between Defense counsel and all of the organization's designees.

Section 4313 contains additional, mandatory reemployment steps for employers who find themselves in this situations. *See* 38 U.S.C. § 4313(a) (West) (commanding, by use of the word "shall," employers to follow order of priority in attempting reemployment) (emphasis added). Depending upon the cause of the disqualification, the employer must take one of two prescribed actions.

If the cause of the employee's disqualification is a disability incurred in, or aggravated during, the employee's military service, the employer must first make reasonable efforts to accommodate the disability. 38 U.S.C. § 4313(a)(3). If those efforts fail, and the employee is still unqualified for her position, then the employer must place the employee

 (A) in any other position which is *equivalent* in seniority, status, and pay, the duties of which the person is qualified to perform or would become qualified to perform with reasonable efforts by the employer; or

 (B) if not employed under subparagraph (A), in a position which is the nearest approximation to a position referred to in subparagraph (A) in terms of seniority, status, and pay consistent with circumstances of such person's case.

38 U.S.C. § 4313(a)(3) (West).

And if the employee is no longer qualified for their pre-service position for *any other reason*, the employer must, again, make reasonable efforts to help the employee become qualified. 38 U.S.C. § 4313(a)(4)(B). If the employee is still unable to become qualified for their pre-service position, then the employer *must* place the employee "in any other position which is the nearest approximation to a position referred to first in clause (A)(i) and then in clause (A)(ii) which such person is qualified to perform, with

full seniority." 38 U.S.C.A. § 4313 (West). The internal reference to clause (A)(i) references the escalator position and clause (A)(ii) references the pre-service position.

This analysis demonstrates that, no matter whether the School made efforts to help Butts become qualified to teach, if those efforts failed then the School's reemployment obligations under § 4313 were not extinguished. The School was required to place Butts in some other position, either pursuant to §4313(a)(3) or (4). That is, § 4313 is not satisfied simply by placing an employee into a position. The order of priority must be adhered to until the employee is placed in a final, appropriate reemployment position, wherever that position lies on the order of priority.

And the School never attempted to reemploy Butts in any other position. (White Dep. 64:12–65:8; 5/11/15 Soltis Dep. 115:17–116:3; Mondak Dep. 147:19–148:11.) This is because, according to the School's organizational designee, once Butts was placed on an improvement plan, she could not transfer to another school. (White Dep. 64:12-65:8.)

**B.** ***The Francis Case Does Not Excuse The School From Complying With § 4313's Order Of Priority.***

In its brief, the School relies upon a 2006 Fourth Circuit case, *Francis v. Booz Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006), for the proposition that Butts's §§ 4312 and 4313 claims are limited to her initial placement at Sinclair. This is incorrect because *Francis* deals with the issue of an employer's USERRA obligations after an appropriate reemployment has been made, while in this case, there never was an appropriate reemployment.

In *Francis*, a United States Navy petty officer was reemployed in her prior position after a five-month tour of active duty. 452 F.3d at 301. The issue was not whether § 4313's

order of priority was followed, but whether § 4313 protects employees from discrimination with respect to the terms and conditions of employment after being rehired. *Id.* At 303-04. And while the Court agreed with the defendant in that case that §§ 4312-13 apply only at the instant of reemployment, *id.* at 304, *Francis* does not speak to the question of when that instant occurs.

In addition, the School's proposition that § 4313 can only be applied to the first position that Butts was placed in ignores some of the most important language in the section. Section 4313 requires, in numerous places, that an employer make reasonable efforts to qualify a returning employee. It then requires the employer to attempt placing the employee in subsequent positions if those efforts fail. "Reasonable efforts" under USERRA "means actions, including training provided by an employer that do not place an undue hardship on the employer." 20 C.F.R. §1002.5(i). Presumably, an employer's training cannot occur at the instant of an employee's reinstatement. Neither can an employer determine, instantaneously, whether its efforts to help the employee qualify have been successful. And even so, the employer could not then attempt reemployment in the § 4313(a)(3) or (4) positions in the same instant that it attempted the initial reemployment.

No, the School's proposed interpretation of § 4313 cannot be correct because it asks the Court to read the "after reasonable efforts" and "cannot become qualified with reasonable efforts" language out of the statute. *Francis* made no such holding, and neither should this Court.

## C. The Sinclair Position Was Intended As A Temporary Position And Not The Final Reemployment Position.

The School argues that Butts's §§ 4312-13 claims can only be applied to the initial reemployment at Sinclair. (Dkt. No. 82 at 13-15.) This ignores the very clear understanding between everyone involved at the time, that that position was always intended as a temporary placement.

Butts began her employment at Sinclair on or about April 23, 2009. (Ex. 2 at ¶ 25.) On May 4, 2009, Butts wrote Dr. Mondak an email, asking "Will I be here at Sinclair till the end of the school and/or will I interview for a position. Just want to be clear and ready." (Ex. 10.) On May 5, 2009, Mondak responded by email, and he described the character of the Sinclair position. (Ex. 10.) In that email, he wrote, "This is a tentative placement for the remainder of this year or until a vacancy opens. I will start working on your placement for next year as soon as they occur. Would you be interested in 5th grade at Nokesville?"

In some cases, a temporary assignment to an alternate position is permissible under USERRA. *See*, *e.g.*, *Lisdahl v. Mayo Found. For Med. Educ. And Research*, 698 F. Supp. 2d 1081, 1106 (D. Minn. 2010), aff'd, 633 F.3d 712 (8th Cir. 2011) (allowing an employer's placement of a reemployed service member in a temporary position until the employee qualified for his pre-service position). In this case, the School needed to find Butts a permanent position in order to comply with USERRA, because her pre-service position was permanent.

In any event, even while Butts worked at Sinclair, the School quickly became aware that she had, during her tour of service, become unqualified to teach. Sinclair's

then-principal Donna Fagerholm told Human Resources that she would not recommend or request that Butts be assigned to Sinclair in a continuing capacity. (Ex. 1 at 2.) Thus, regardless of whether the Court considers Butts's §§ 4312-13 claim from the time of the Sinclair assignment or the Montclair Assignment, the School violated § 4313 when it failed to place Butts in a position for which she was qualified.

### D. The School Never Reemployed Butts Under USERRA Because It Never Applied the Escalator Principle.

The School's first and primary obligation, once it determined that Butts was entitled to reemployment pursuant to 38 U.S.C. § 4312, was to place Butts in

> the position of employment in which the person *would have been employed* if the continuous employment of such person with the employer had not been interrupted by such service or a position of like seniority, status and pay, the duties of which the person is qualified to perform;"

38 U.S.C.A. § 4313(a)(2)(A) (West) (emphasis added). This rule is called the escalator principle, and it dates back to 1946, when the Supreme Court of the United States held that a returning service member "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284-85, 66 S. Ct. 1105, 1111, 90 L. Ed. 1230 (1946).

But if, and only if, the returning service member is not qualified for the escalator position, then he or she must be reemployed "in the position of employment in which the person *was employed* on the date of the commencement of the service in the uniformed services, or a position of like seniority, status and pay, the duties of which the person is qualified to perform . . . ." 38 U.S.C.A. § 4313(a)(2)(B) (West) (emphasis added). Prince

William County Schools' regulations, however, require its staff to *skip the escalator position entirely*. Pursuant to regulation, employees "returning from an approved military leave of absence, with and/or without pay, shall be placed in *the position the employee held* when ordered to report for active duty or to an equivalent position . . . ." Prince William County Public Schools regulation 542.07-I(VII)(A). This regulation skips the escalator principle entirely, and is entirely at odds with USERRA and controlling United States Supreme Court precedent. Where, as here, there is a conflict between USERRA's reemployment priorities and the School's, USERRA controls, and looking to 38 U.S.C. §4302, titled "Relation to other law and plans or agreements" shows why. It states that

> This chapter *supersedes any State law* (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C.A. § 4302(b) (West) (emphasis added). In this case, as in every USERRA case, "the starting point for determining the proper reemployment position is the escalator position . . . ." 20 C.F.R. § 1002.191.

Thus, the escalator principle requires the employer to promote the returning service member if there is a reasonable certainty that the employee would have attained that position but for the period of service. *Id.* And the principle can even require an employer to extend to the employee a discretionary promotion, even if it is not a foregone conclusion that the employee would have received that discretionary promotion but for the period of service. *Rivera-Meléndez v. Pfizer Pharmaceuticals, LLC*, 730 F.3d 49, 50-51 (1st Cir. 2013) (holding that "the escalator principle and reasonable

certainty test apply regardless of whether the promotion at issue is automatic or non-automatic"); Administrative Notice Accompanying Final Rules implementing the Uniformed Services Employment and Reemployment Rights Act of 1994, as amended, 70 Fed. Reg. 75,246, 75,271 (Dec. 19, 2005), available at 2005 WL 3451172, *75271 (F.R.) ("Sections 1002.191 and 1002.192 advances these principles, and incorporates the reasonable certainty test as it applies to discretionary and non-discretionary promotions."); *Evans v. Massmutual Financial Group*, 856 F. Supp. 2d 606, 612 (W.D. N.Y. 2012) ("the statute does not require promotion or advancement to be a 'foregone conclusion,' but a 'reasonable certainty.'").

Butts did apply for an escalator position. On January 21, 2009, she applied to be either an Administrative Coordinator, an Assistant Principal, or a Principal. And the School's corporate designee testified that fifth grade teachers, like Butts, are promoted to supervisory roles like that of assistant principal or principal, if they are qualified and certified for the position. (Mondak Dep. 23:1-9.)

And those qualifications appear to only be procedural, and not substantive requirements. According to the organizational designee, all a teacher need have to be promoted to an administrative position is (1) Certification from the Commonwealth of Virginia and from the administration, (2) the presence of an application on file, (3) references, (4) transcripts giving proof of class work, (5) certification documents, and a (6) request to be interviewed. (Mondak Dep. 23:10-25:15.)

Butts submitted her application to be considered for an administrator, principal, or assistant principal on January 21, 2009. That application included the required references. She also possessed a masters degree in education, had (at that time) eight

years of experience as an elementary school teacher with positive reviews, and was a Lieutenant Colonel in the United States Army Reserve with substantial leadership experience. Given that there were no educational qualifications preventing Butts from filling an administrative position, a jury could find that there was a reasonable certainty that Butts would have been promoted to the position of administrator, but for her period of service.

This is especially the case considering that the School was required by USERRA to make reasonable efforts to help Butts qualify for an administrative position, assuming there is a reasonable certainty she would have been promoted during her absence. *See* 38 U.S.C. §4313(a)(2)(B), 20 C.F.R. §1002.197(a) ("The employer must make reasonable efforts to help the employee become qualified to perform the duties of [the escalator] position."). "Reasonable efforts" under USERRA "means actions, including training provided by an employer that do not place an undue hardship on the employer." 20 C.F.R. §1002.5(i). And the term "qualified" under USERRA is simple, meaning only "having the ability to perform the essential tasks of the position." 20 C.F.R. §1002.5(h).

But the School never considered the escalator principle. Instead, as Dr. Mondak told Butts when she complained that her transfer from Dumfries to Montclair was a USERRA violation (Ex. 3), she was placed in the position that she held when she left for military service, that of a teacher.

II.  **BUTTS HAS STANDING TO ASSERT §§ 4312-13 CLAIMS BECAUSE BUTTS'S PTSD WAS CAUSALLY CONNECTED TO THE SCHOOL BOARD'S ACTIONS.**

Butts's claim for lost wages under 38 U.S.C. §4323 arises out of the undisputed fact that Butts's mental and psychological condition deteriorated during the period of

her attempted reemployment. And the School's 1.5 year failure to place Butts in a position for which she was qualified, along with the perpetual action plans, improvement plans, and threats of termination, caused Ms. Butts's condition to worsen to the point that she is now no longer able to work. A USERRA plaintiff who successfully proves that her employer's USERRA violation caused her disability-related inability to work will have access to monetary damages. *See Montoya v. Orange Cnty. Sheriff's Dep't*, No. SACV 11-1922 JGB RNB, *available at* 2014 WL 6389433, at *7 (C.D. Cal. Nov. 13, 2014).

The *Montoya* case is strikingly similar to this one. The defendant in *Montoya*, like the School here, (Dkt. No. 82 at 28-30), relied upon the Department of Veterans Affairs' decision that the plaintiff had a service connected PTSD and panic disorder, evaluated at 70 percent. *Id.* at *4. This, the employer argued, was "conclusive proof" that the plaintiff's injuries were related to military service. *Id.* The Court disagreed, finding there was sufficient evidence to support the conclusion that the employer's hostile work environment was a but-for cause of the plaintiff's PTSD, allowing a front pay award. *Id.* at *6-7 (citing *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1155-56 (9th Cir.1999).

As in *Montoya*, there is substantial evidence from which a jury can find that Butts's current disability is causally connected to the School's actions. But even more important, however, is the fact that a Virginia Agency, the Virginia Workers' Compensation commission (the "VWCC") has already determined that that causal connection exists.

*A.* *The School is Estopped From Arguing That No Causal Connection Exists Between Butts's Disability and Its Actions Because The Virginia Workers' Compensation Commission Found That Butts Became Emotionally Distressed and Anxious Regarding Her Employment And Warnings About Termination.*

It is the *finding of fact of the Virginia Worker's Compensation Commission* that Butts "became emotionally distressed and anxious regarding her employment and warnings of termination." *Butts v. Prince William County Sch.*, JCN VA02000007939, (Va. Workers Compensation Comm. Dec. 21, 2012), attached as Ex. 4, at 5. Because this was an adverse finding of fact against the School in a collateral proceeding in which the school was represented by counsel, the School should be estopped from arguing that its actions were not causally related to Butts's declining emotional and psychological condition.

"The doctrine of issue preclusion forecloses the 'relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate.'" *Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 343 (4th Cir. 1992) vacated without explanation, No. 91-1873(L), 1993 WL 524680 (4th Cir. Apr. 7, 1993) (quoting *Virginia Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311 (4th Cir.1987)). The elements of issue preclusion are

(1) the issue precluded must be identical to one previously litigated;

(2) the issue must have been actually determined in the prior proceeding;

(3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;

(4) the prior judgment must be final and valid; and

(5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Ramsay v. U.S.I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994) (citing *Coffey v. Dean Witter Reynolds, Inc.*, 961 F.2d 922, 925 (10th Cir.1992); *Central Transport, Inc. v. Four Phase Systems, Inc.*, 936 F.2d 256, 259 (6th Cir.1991)). And issue preclusion applies even where the preclusive decision comes from an agency, as opposed to another Court. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293 (2015) (holding that agency decisions can give rise to issue preclusion).

In this case, each of the elements of issue preclusion are present in the VWCC Decision. First, the question before this Court, as set forth in *Montoya*, is whether there is a but-for causal connection between Butts's disability-related inability to work and the School's USERRA violation. *See* 2014 WL 6389433, at *6. And the School's § 4313 failure took the form of two-years of action plans and performance improvement plans, complete with threats of termination. *See* Part II.A., above. And the VWCC already made a finding of fact addressing this exact question. (Ex. 4 at 5 ("Based upon the claimant's testimony, we find that the claimant became emotionally distressed and anxious regarding her employment and warnings about termination.")). Second, the question was actually determined by the VWCC. In fact, it is one of two numbered findings of fact contained under the heading "II. Findings of Fact."

Third, the question of the causal relationship between Butts's emotional distress and anxiety was a "critical and necessary part of the decision" before the VWCC. *See Ramsay v. U.S.I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994). The question before the VWCC was whether Butts's injuries were causally related to either a physical injury or to an obvious sudden shock or fright arising in the course of employment. (Ex. 4 at 6 (citing *Chesterfield County v. Dunn*, 9 Va. App. 475, 474, 389 S.E.2d 180, 182 (1990)). While the VWCC

agreed that there was a causal connection to Butts's situation at work, it did not decide that Butts's situation contained an obvious shock or fright. *Id.* Nevertheless, for purposes of the present analysis, the VWCC was tasked with deciding the necessary question of whether a causal relationship existed between Butts's employment and her emotional distress. It decided that issue in Butts's favor.

Fourth, the VWCC decision finally resolved Butts's Workers' Compensation Commission claim. It contained a statement that the decision was appealable to the Virginia Court of Appeals within 30 days. (Ex. 4 at 7.) This was a final decision.

Finally, and perhaps most importantly, the School had an opportunity to, and did, actively participate in the VWCC proceedings. For example, the School was represented by attorney Ralph L. Whitt, Esquire at a hearing with witnesses conducted on January 24, 2012. Additionally, Mr. Whitt submitted a memorandum of law opposing Butts's request for review of the Deputy Commissioner's February 6, 2012 Opinion. (Ex. 5.) And the School did argue, strenuously, that no causal connection existed between any of Butts's symptoms and its actions. (Ex. 5 at 2-7.) Over the course of six pages, the School argued, among other things, that Butts's symptoms were not causally related to her employment. (Ex. 5 at 2-7.) The VWCC disagreed.

The Court should apply finality to that decision, and prevent the School from arguing again that there is no causal connection between Butts's inability to work and the School's USERRA violations.

**B. Abundant Evidence Demonstrates That Butts's Emotional And Psychological Symptoms Worsened During The Course Of Her Employment And That The Action Plan And Threats Of Termination Caused That Worsening.**

In addition to the VWCC decision, which conclusively settles the issue, the record is replete with facts from which a jury could find Butts's PTSD was causally related to the action plans, performance improvement plan, and threats of termination.

First, and perhaps most important, are the differences in diagnoses between Butts's symptoms before seeking reemployment and after. After returning from Kuwait and before being reemployed by the School, Butts had a diagnosis of Adjustment Disorder. (Ex. 6.). Her diagnosis is now full PTSD. (Ex. 7 at 1; Ex. 8 at 2.) While the School's expert, Dr. Liza Gold, attributed all of Butts's symptoms to Butts's military service between 2004 and 2008 (Ex. 7 at 1-9), Butts's rebuttal expert found that Butts's feelings about her treatment at the School were a decisive factor in Butts's symptom development. (Ex. 8 at 2.)

Additionally, the testimony of the witnesses and the documentary record show a clear progression of Butts's anxiety and depression that is causally connected to her employment situation. Butts started her first permanent position upon reemployment, the fourth grade teacher position at Montclair, on September 8, 2009. (Ex. 9.) Neither Ms. Soltis nor Ms. Forgas, Butts's Principal and Assistant Principals while at Montclair, saw anything that led them to conclude that Butts was depressed. Ms. Forgas, for example, first responded to the question of whether Butts appeared depressed to her by testifying, "Not – not that I was aware of. I mean, I'm not in a position to make that type of decision." (Forgas June 8, 2015 Dep. at 16:14-17.) She testified that, during that same time period, Butts appeared no more anxious to her than to anybody else. (Forgas June

8, 2015 Dep. at 20:21-23:11.) Ms. Forgas similarly never observed Butts cry. (Forgas June 8, 2015 Dep. at 25:13-15.)

Ms. Soltis testified similarly. She never saw Butts appear depressed during the first half of the 2009-2010 school year. (Soltis June 8, 2015 Dep. at 15:10-16:9.) And Soltis saw Butts exhibit no outward signs of anxiety during that period. (Soltis June 8, 2015 Dep. at 16:10-18:1.)

Contrast Butts's appearance to Forgas and Soltis, two laypersons, of not appearing particularly depressed or anxious, with Butts's condition when she was terminated. That condition can best be observed in the audio recording made on June 15, 2011 during a meeting between Butts, Ms. Soltis, Debra Sparks, Ms. White, and Butts's family and friends. (Ex. 28).[2]

And the documentary evidence generated between Butts's reemployment and her termination show how and why Butts's health declined. In chronological order, Butts's decline is shown by the following documents. First, on July 2, 2009, after being reassigned from Dumfries Elementary to Montclair, Butts wrote a letter to Dr. Mondak where she stated that, "The worry and depression returned as I went to work on the last day of school not knowing my fate and contemplating the recent events for a Job I have suffered a great deal of frustration to get back." (Ex. 11 at 1.) Then, on November 9, 2009, Butts wrote to William Reid, III, the School's Compliance Officer. (Ex. 12.) In that letter Butts wrote, "Left the school extremely frustrated + low on sleep, vitamins, etc. I need to

---

[2] The attached exhibit is a transcript of that audio recording. However, the Court will not be able to develop a full understanding of Butts's condition without listening to the audio recording. That recording is available for review at https://goo.gl/HDXoSY. Butts's statements begin at around 14:18.

know what my rights are. I feel extremely discriminated against + think that I'm being punished for having taken this case to the ESGR to get my job back with the County." (Ex. 12.) By February 22, 2010, Butts was refusing to sign action plan-related communications from the School. (*See, e.g.*, Ex. 13 at 3.)

In April 2010, the evidence starts to show more alarming symptoms. On April 20, 2010, Butts submitted to the school a document called a Reflection. (Ex. 14.) In that Reflection, Butts wrote,

> It was interesting that these courses were provided as part of Teacher training at the beginning of [sic] 4th quarter as a professional development tool that could be used by teachers at 2:00 a.m. The life skill of caring, flexibility, and caring [sic] appeared not to be a factor. As with this entire year, upon completing excessive amount of training over and beyond the reasonable amount, over 250 hours, the expectation is to do more and compromise the standard basic things required to plan, prepare, and complete assessments for the students. Makes you wonder, what the priority is. *I feel it is designed to stress one out until breakdown. I feel very confident, that is [sic] I died tomorrow, I will be soon forgotten.*

(Ex. 14.) The next day, Butts wrote an email to Ms. Forgas where she wrote,

> It is 1:34 a.m. (finished the email at 1:46 a.m.) and I haven't finished all that I need to do to prepare for tomorrow (nor complete w/report cards) almost, not to mention getting the sleep I need to function properly. These activities are time-consuming and taking up valuable time I need to take care of self and prepare.

(Ex. 15.) And the day after that, Butts went to an Urgent Care. In that visit, Butts's blood pressure was "outside of the expected range . . . ." (Ex. 16.)

Ms. Soltis recommended Butts be terminated on May 14, 2010. (Ex. 17.) Within the following month, Butts's condition significantly worsened. First, on June 2, 2010, after an action plan meeting (Am. Compl. at ¶ 131), Butts began feeling suicidal, and reported to a crisis intervention counselor. (Ex. 18.) She reported to that counselor that

"She was experiencing suicidal thoughts related to stress from her job as a teacher." (Ex. 18.) Butts felt that she was at a 7 on a 1 to 10 scale of acting on her thoughts. (Ex. 18.) She complained to the counselor that she was working excessively and trying to meet shifting and arbitrary job descriptions. The next day, Butts took emergency sick leave from the School. (Ex. 19.) Then, on June 10, 2010, Butts again visited an Urgent Care with high blood pressure. (Ex. 20; Ex. 21.) She also reported feeling anxiety that she described as medium-severe. (Ex. 21.)

On June 15, 2010, Butts began seeing a Licensed Clinical Social Worker, Wendy Radding. (Ex. 22.) In a meeting with Ms. Radding on that day, Butts reported that she was feeling anger, hostility, anxiety, nervousness, concerns about her career, depression, failure, fatigue, emptiness, fear, panic attacks, and more. (Ex. 22.) Butts also reported that she had originally had to fight the School to even attain reemployment. (Ex. 22.) Butts complained to Ms. Radding of wrongful termination and being nitpicked on the action plan. (Ex. 22.)

Butts continued to see Radding and other providers, and in September 2010, her psychiatrist, Van Nguyen, M.D. began requesting that Butts take leave from the School. In the first such request, dated September 30, 2010, Nguyen wrote that, "As a result of work related stressors, she [Butts] has been experiencing a lot of anxiety, depressed mood, and intrusive thoughts of her time serving in the military. (Ex. 23.) On October 22, 2010, he wrote,

> I am writing this letter on behalf of Dianne Butts. I saw her on today's date and would strongly recommend that she start her leave of absence on October 27, 2010. She has medical appointments on October 28th and 29th and taking time off before these appointments

would greatly assist in her well being. (Ex. 24.)

Butts was thereafter on leave from the school from October 27, 2010 until her termination. Despite this, however, on January 31, 2011, Butts received a Mid-Year Report from the School and an attached letter. (Ex. 25.) That letter concluded with the statement, "Ms. Butts remains at risk for a recommendation of dismissal." (Ex. 25 at 3.) Butts wrote back to the School on February 7, 2011, writing,

> Upon receipt of a certified notification in the mailbox, my blood pressure shot up to 170, I had heart palpitation and tense muscles, and crying ensued. . . . As you know, anxiety and stress can kill you. The negative emotions that you all have stirred up in my soul takes away from my good nature and care and concern for the children whose lives I have impacted positively.

> It is appalling that so much time and energy has been spent to degrade a teacher. Due to my current medical condition and long term sick leave status, I am not mentally able to review and sign the evaluation that I adamantly disagree with. My focus is my healing and getting well.

> You have a blessed week and may God bless you abundantly. Instead of me being at risk for dismissal, I am in a position of healing. I will not allow the negative words "Ms. Butts remains at risk for a recommendation of dismissal," continue to further impact my health. Everyone in the food chain as educators is subject to the higher power.

> Please respect my current status on sick leave. Items returned without action.

(Ex. 26).

As this document trail makes clear, there is an abundance of evidence from which a jury could find that Butts's current disability is causally connected to the School's USERRA violations.

III. **THE SCHOOL'S ARGUMENT THAT BUTTS WAS NOT A QUALIFIED PERSON UNDER THE ADA IS PERSUASIVE.**

In this brief, Plaintiff has argued that the School's liability under USERRA stems from its inability to place Butts in a non-teaching position upon learning that Butts was unqualified to teach. *See* Part I.A, above. As the School points out, an ADA plaintiff is required to show that she is capable of performing the essential functions of her job. *Tyndall v. Nat'l Educ. Ctrs, Inc.*, 31 F. 3d 209, 213 (4th Cir. 1994) (quoting *Southeastern Comm. Coll. v Davis*, 442 U.S. 397, 406 (1979)). Butts was clearly unable to teach on June 8, 2015, when she requested additional time to defend herself against dismissal proceedings. (Ex. 27 at 2-3.) In fact, she wrote, "Currently, my mental capacity is limited to properly defend myself against the charges of "poor performance" and "dismissal for cause." Unfortunately, this likely means that the School is correct that Butts's ADA claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should deny the School's motion for summary judgment.

Dated: July 20, 2015

Respectfully Submitted,


/s
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Jacob M. Small (VSB # 84460)
Attorney for Dianne Butts
J. Madison PLC
1750 Tysons Blvd.
Suite 1500
McLean, Virginia 22102
P (703) 910-5062
F (703) 910-5107
jmsmall@jmadisonplc.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2015, I electronically filed the foregoing MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to the following attorneys of record:

Kristi Johnson
Blankingship & Keith, PC
4020 University Drive
Suite 300
Fairfax, Virginia 22030
(703) 293-7229
kjohnson@bklawva.com

Mary McGowan
Blankingship & Keith, PC
9300 West Courthouse Road
Suite 201
Manassas, Virginia 20110
(703) 365-9945
mmcgowan@bklawva.com

*Counsel for Defendant*

Chidi James
Blankingship & Keith, PC
4020 University Drive
Suite 300
Fairfax, Virginia 22030
(703) 691-1235
cjames@bklawva.com

/s
_____
Jacob M. Small (VSB # 84460)
Attorney for Dianne Butts
J. Madison PLC
1750 Tysons Blvd.
Suite 1500
McLean, Virginia 22102
P (703) 910-5062
F (703) 910-5107
jmsmall@jmadisonplc.com